1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7
8

9 | PHENG YANG,

10 |     Plaintiff,

11 |     v.

12 | Tulare County Sherriff MIKE BOUDREAUX
in his Official Capacity, Tulare County Deputy
13 | Sherriff MATTHEW WILLIAMS in his
Individual Capacity, Tulare County Deputy
14 | Sherriff HERNANDEZ in his Individual
Capacity, Tulare County Deputy Sherriff
15 | VERENZUELA in his Individual Capacity,
Tulare County Deputy Sherriff HENDERSON
16 | in his Individual Capacity, Tulare County
Deputy Sherriff PUGH in his Individual
17 | Capacity, Tulare County Deputy Sherriff
HOOD in his Individual Capacity, TULARE
18 | COUNTY, and DOES 1-15, inclusive,

19 |     Defendants.

Case No.  1:21-cv-00148-BAM

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

(Doc No. 18)

20

21     On February 4, 2021, Plaintiff Pheng Yang ("Plaintiff") filed this action against Defendants

22 Tulare County Sherriff Mike Boudreaux in his official capacity, Deputy Matthew Williams in his

23 individual capacity, Deputy Hernandez in his individual capacity, Deputy Verenzuela in his

24 individual capacity, Deputy Hernandez in his individual capacity, Deputy Pugh in his individual

25 capacity, Deputy Hood in his individual capacity, and Tulare County ("Defendants").[1] (Doc. No. 1.)

26     On April 20, 2021, Defendants moved to dismiss the complaint and Plaintiff responded with

27

28 _____

[1]     The parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 6, 9, and 11.)

a first amended complaint. (Doc Nos. 8, 16.) The first amended complaint ("FAC") alleges eleven causes of action: (1) Amendments IV, XIV Violation (42 U.S.C. § 1983); (2) Amendment II Violation; (3) Denial of Equal Protection (Amend. XIV); (4) Conspiracy to Violate Civil Rights (42 U.S.C. § 1985); (5) Municipal Liability (*Monell*); (6) Violation of Bane & Ralph Acts; (7) False Arrest; (8) Conversion; (9) Negligence; (10) Intentional Infliction of Emotional Distress; and (11) Negligent Infliction of Emotional Distress. (Doc. No. 16.)

Defendants again moved to dismiss Plaintiff's claims asserted in the first amended complaint on June 14, 2021. (Doc. No. 7.) Plaintiff opposed the motion on June 25, 2021, and Defendants replied on July 7, 2021. (Doc. Nos. 20, 26.) On June 25, 2021, Plaintiff also filed a Request for Judicial Notice. (Doc. No. 21.) On July 1, 2021, Defendant also filed a Request for Judicial Notice. (Doc. No. 25.) The Court deemed this matter suitable for decision without oral argument pursuant to Local Rule 230(g).

Having considered the moving, opposition, and reply papers, and for the reasons set forth below, Defendants' motion to dismiss the first amended is HEREBY GRANTED.

## I.      FACTUAL BACKGROUND[2]

This case arises out of the search and seizure of Plaintiff's large capacity magazines, and his subsequent arrest for violation of California Penal Code § 32310 and involves several claims for civil rights violations as a result of police conduct.

On April 14, 2019, a judge in the United States District Court for the Southern District of California issued an order enjoining enforcement of California Penal Code §32310.[3] (FAC ¶ 13.) The order expressly enjoined the enforcement of Penal Code § 32310[4] for persons who bought

---

[2]      The facts are derived from Plaintiff's first amended complaint and referenced exhibits. However, Plaintiff failed to attach the exhibits to the complaint. Defendants also failed to attach several exhibits to their Motion to Dismiss. Both parties have requested judicial notice of exhibits. (Doc. Nos. 21, 25.)

[3]      The Stay order was issued in *Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. March 29, 2019), which also found Penal Code § 32310 unconstitutional. The matter was appealed to the Ninth Circuit, where the order was affirmed. *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020). The order has since been vacated in *Duncan v. Becerra*, 988 F.3d 1209 (9th Cir. 2021), and is pending a rehearing in the Ninth Circuit *en banc*.

[4]      Cal. Penal Code § 32310(c) states, "Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, commencing July 1, 2017, any person in this state who possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, or is

large-capacity magazines between March 29, 2019, at 2:24 p.m. PDT and April 5, 2019, at 5:00 p.m. PDT.[5] (FAC ¶ 13.) On April 25, 2019, Douglas Wormald, a program manager of the Command Center of the California Department of Justice's Bureau of Criminal Identification & Investigative Services swore and declared that on April 15, 2019, he notified the Tulare County Sheriff's Office ("TCSO") of the order enjoining enforcement of Penal Code § 32310. (FAC ¶ 13.)

On or about January 22, 2020, Defendants Williams, Hernandez, Verenzuela, Henderson, Pugh, Hood, and Does of the TCSO, with the help of the California Department of Corrections and Rehabilitation, the Tulare County Probation Department, and certain investigators from the Tulare County District Attorney's Office, conducted multiple Parole and Probation compliance checks at Plaintiff's home. (FAC ¶ 15.A.) Defendants Williams, Hernandez, Verenzuela, Henderson, Pugh, Hood, and Does of the TCSO located Plaintiff's brother and co-tenant Smith Yang. (FAC ¶ 15.E.)

After questioning, Smith Yang notified the officers that his brother, Plaintiff, owned some firearms that were stored in Plaintiff's bedroom. (FAC ¶ 15.F.) Smith Yang did not give consent for the officers to search Plaintiff's bedroom. (FAC ¶ 25.F.) Defendants then conducted a warrantless search of Plaintiff's bedroom, finding two large capacity magazines ("LCMs"). (FAC ¶ 15.G.) After the search had been completed, Plaintiff returned home. (FAC ¶ 15.H.) Officers questioned Plaintiff about the LCMs, to which Plaintiff informed the officers he purchased them during "freedom week." (FAC ¶¶ 15.I, 15.J.) Defendant Williams demanded proof of the seller's identity and a dated receipt, which Plaintiff could not provide. (FAC ¶ 15.K.) Plaintiff was then arrested and booked into the Tulare County Jail. (FAC ¶ 15.L.)

On March 3, 2020, Plaintiff was charged in a 1-count felony complaint for violating Penal Code § 32310(a). (FAC ¶ 15.N.) On June 25, 2020, Plaintiff's charge was dismissed pursuant to California Penal Code § 1382 and 1385. (FAC ¶ 15.O.) Following dismissal of the criminal case, Plaintiff successfully moved for a finding of factual innocence pursuant to California Penal Code § 851.8. (FAC ¶ 15.P, 16.)

---

guilty of a misdemeanor punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

[5]   March 29, 2019, 2:24 p.m. until April 5, 2019, 5:00 p.m. is considered "freedom week" where the purchase of large capacity magazines was temporarily legal in California.

## II.      LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550

U.S. at 562.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**III.    DISCUSSION**

**A.  Judicial Notice**

Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). A "court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *accord In re Korean Air Lines, Co., Ltd.*, 642 F.3d 685, 689 n.1 (9th Cir. 2011); *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

Both Plaintiff and Defendants have requested the Court take judicial notice of various documents, some of which the parties failed to attach to the first amended complaint and to the motion to dismiss. Both parties request documents from Plaintiff's underlying criminal case be judicially noticed: the preliminary hearing transcript (Doc. No. 21-1, Exh. A), criminal complaint filed against Plaintiff (Doc. No. 25 Exh. 2), order denying Plaintiff's demurrer and setting case for preliminary hearing (Doc. No. 25 Exh. 3), order following preliminary examination (Doc. No. 25 Exh. 4), minute order dismissing the criminal case (Doc. No. 21-1, Exh. B), and order finding of factual innocence (Doc. No. 21-1, Exh. C). Plaintiff also seeks judicial notice of the declaration of Douglas Wormald (Doc. No. 21-1, Exh. D; also attached to Plaintiff's Tort claim at Doc. No. 21-1 Exh. F), *Duncan v. Becerra,* 366 F.Supp.3d 1131 (S.D. Cal. March 29, 2019) (Doc. No. 21-1, Exh. E), and Plaintiff's tort claim filed with the County of Tulare (Doc. No. 21-1, Exh. F). As to documents from Plaintiff's underlying criminal case, the Court can take judicial notice of records from inferior courts. The Court will take notice of the documents from the criminal case. As to

Plaintiff's Tort claim and the declaration of Douglas Wormald, which are attached, the claim is a copy of the file stamped original and it appears to be an exact copy of the claim filed by Plaintiff. Further, both parties seek notice of the claim and neither makes any objection as to its authenticity. The Court will take judicial notice of the claim because it is from a source whose accuracy cannot be reasonably questioned. Finally, the Court does not find it necessary to take judicial notice of a case whose ultimate decision is still pending. *Duncan* will be recognized as any other case citation would be treated.

### B.   Plaintiff cannot Proceed against both "Tulare County" and "Sherriff Boudreaux, in his Official Capacity"

Personal-capacity suits are brought to seek personal liability against a government official for actions taken under color of law. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). Whereas official-capacity suits generally only represent an alternative way to plead a cause of action against the entity for which the official works. *Graham,* 473 U.S. at 165. So long as the government entity has sufficient notice and an opportunity to respond, the suit should be treated as a suit against the entity. *Id.* at 166.

Plaintiff concedes that a suit against Sheriff Boudreaux in his official capacity is the same as a suit against Tulare County, the government entity for which Sheriff Boudreaux works. Plaintiff therefore asks for leave to amend his complaint to bring his claims against Sheriff Boudreaux in his personal capacity. Defendants argue that Plaintiff's FAC already includes allegations against Sheriff Boudreaux in his individual capacity. The Court agrees. The FAC names Sheriff Boudreaux both individually and in his official capacity. As such, the claims against Sheriff Boudreaux in his official capacity will be dismissed as Tulare County is separately named.

### C.   42 U.S.C. § 1983, Violations of Amendments IV, XIV – Warrantless Search

In Plaintiff's first cause of action, Plaintiff alleges that Defendants conducted a warrantless search of his bedroom and seized weapons and ammunition without probable cause. (Doc. No. 16 at 9.) Defendants argue that the search and seizure did not violate the Fourth or Fourteenth Amendments because Parolee Yang and his home are subject to suspicionless searches and there was express consent to search the home. (Doc. No. 18 at 12-15.) Specifically, Defendants allege that the complaint fails to include allegations that the area searched was not accessible to Parolee

Yang. (*Id.*) Plaintiff counters that Parolee Yang did not consent to the search, and that he lacked authority to consent. (Doc. No. 20 at 4-7.)

"To state a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." *Campbell v. Washington Dep't of Soc. Servs*., 671 F.3d 837, 842 n. 5 (9th Cir. 2011) (citing *Ketchum v. Alameda Cty*., 811 F.2d 1243, 1245 (9th Cir.1987)). The Fourth Amendment prohibits unreasonable searches and seizures. *Grady v. North Carolina,* 575 U.S. 306, 135 (2015). A warrantless search is per se unreasonable unless the search falls within one of the exceptions to the warrant requirement, as for example, consent is given. *City of Los Angeles, Calif. v. Patel,* 576 U.S. 409 (2015); *Carpenter v. U.S.,* 138 S. Ct. 2206, 2221 (2018).

Consent to conduct a search is an exception to the warrant requirement. Generally, an officer may conduct a search of a jointly occupied premises if one of the occupants' consents. *Fernandez v. California,* 571 U.S. 292, 294 (2014). However, consent of one occupant is insufficient where another occupant is physically present and objects to the search. *Fernandez,* 571 U.S. at 594. A third-party can consent to a search if that person possesses common authority over or other sufficient relationship to the premises or effects to be searched. *United States v. Beard,* 597 Fed.Appx. 921, 923 (9th Cir. 2015) (citing *United States v. Matlock,* 415 U.S. 164, 171 (1974). "Common authority is joint access or control for most purposes." *Beard,* 597 Fed.Appx. at 923. Common authority over a residence may not necessarily mean there is common authority over all locations or objects within the residence. *See Georgia v. Randolph,* 547 U.S. 103, 112 (2006). However, even if a third party with joint access does not have access or control for most purposes, the owner may assume the risk that the third party would exceed the scope of their access and consent to a search. *United States v. Kim,* 105 F.3d 1579, 1582 (9th Cir. 1997).

A person can have actual authority to consent to a search of a container if the owner has expressly authorized that person access, or if the person has mutual use of the container and joint access to or control over the container. *United States v. Fultz,* 146 F.3d 1102, 1105 (9th Cir. 1998). A person can have the apparent authority to consent to a search where the officer conducting the

search reasonably believes that the person has actual authority to consent. *Fultz,* 146 F.3d at 1105. To assess whether an officer's belief was reasonable, courts consider the facts known to the officer at the time of the search. *Illinois v. Rodriguez,* 429 U.S. 177, 188 (1990).

The Fourth Amendment does not prohibit police officers from executing a suspicionless search of a parolee. *Samson v. California,* 574 U.S. 843, 857 (2006) (finding parolee was "unambiguously" aware of the condition when he signed an order submitting to the condition). Parolees have a diminished expectation of privacy and the state's interest in supervising parolees is overwhelming. *Samson,* 574 U.S. at 852-53.

Defendants argue that Plaintiff has not alleged any facts that would support that parolee Yang lacked access and control of the area housing the weapons and LCMs. Plaintiff counters that there was no common authority for Parolee Yang to grant consent to search Plaintiff's room. Additionally, Plaintiff argues that notifying the officers of the weapons and knowing that they are present is not sufficient information to assess whether Parolee Yang had access and/or control of the weapons.

In the first amended complaint, Plaintiff's alleges that Defendants violated his Fourth and Fourteenth Amendment rights are bare and conclusory. Plaintiff alleges "Defendants [] conducted a warrantless search of Plaintiff's bedroom and seized his weapons and ammunition, all without probable cause. When, after being informed that Plaintiff purchased the large capacity magazines during 'Freedom Week', Defendant Williams with the help and support of Defendants Hernandez, Verenzuela, Henderson, Pugh, Hood, and DOES recklessly instigated an arrest of Yang." (Doc. No. 16 at 9.)

Defendants are correct that Plaintiff fails to allege that was no consent to search Plaintiff's bedroom. Plaintiff also does not allege that Parolee Yang lacked access or control of the area. Plaintiff's allegations include conclusory statements that the search was unreasonable but fails to include any facts explaining why Plaintiff alleges the search was unreasonable. Further, parolees are subject to suspicionless searches as part of their terms of release, and the allegations are void of whether Parolee Yang had access to the room or authority to allow the search. Based on Plaintiff's conclusory and threadbare allegations, Defendants' Motion to Dismiss will be granted as to

Plaintiff's first cause of action with leave to amend.

### D.  Amendment II Violation – Right to Keep and Bear Arms

In Plaintiff's second cause of action, Plaintiff alleges Defendants infringed on Plaintiff's Second Amendment right to bear arms by seizing Plaintiff's weapons and ammunition without probable cause, retaining the weapons and ammunition, arresting and incarcerating Plaintiff, and compelling him to expend resources to defend himself against criminal charges. (Doc. No. 16 at 10.)

The Second Amendment protects an individual's right to bear arms. *District of Columbia v. Heller,* 554 US 570, 595 (2008). However, the scope of the right is not without limits. *Heller,* 554 U.S. at 626-27. In *Heller*, the Court determined that the Second Amendment only protected weapons in "common use," including the handgun, which Heller called the "quintessential self-defense weapon."[6] *Id.* at 627, 629, 128 S.Ct. 2783.

Defendants argue that there was probable cause for Plaintiff's arrest, therefore, the seizure of Plaintiff's weapons and ammunition was lawful. (Doc. No. 18 at 15-16.) Specifically, Defendants argue that Plaintiff does not allege that he was denied the return of his property, or that he had no available means of securing the return of his property. (*Id.*) Plaintiff counters that he was wrongfully deprived of his right to bear arms because officers lacked probable cause to seize the property and arrest Plaintiff, as demonstrated by the finding of factual innocence. (Doc. No. 20 at 7-9.)

Plaintiff does not allege that he was denied the return of his property. Defendants argue that Plaintiff's property was returned to him. If that is the case, Defendants only temporarily dispossessed Plaintiff of his firearms, he was not permanently deprived of his right to bear arms. To the extent Plaintiff alleges that his firearms were taken and not returned, Plaintiff may be able to allege a Second Amendment claim, or possibly a Fourteenth Amendment due process claim. Plaintiff must clearly allege a state actor violated the Second Amendment by depriving him of specific firearms that he otherwise lawfully possessed for self-defense.

Defendants further argue that Plaintiff is unable to state a claim for a Second Amendment violation because the officers had probable cause to arrest and Cal. Penal Code § 32310 is a valid

---

[6]     The Court acknowledges the dearth of case authority, and no precedent, on the Second Amendment with facts similar to the instant case.

law. Plaintiff alleges Defendants violated his Second Amendment rights when they enforced §
32310 against Plaintiff. Plaintiff alleges that there was an order to stay enforcement of Cal. Penal
Code § 32310, which prevented enforcement against persons who, like Plaintiff, purchased their
LCMs during freedom week. Plaintiff further alleges that TCSO and Sherriff Boudreaux were
aware of the stay, yet officers still arrested Plaintiff for possession of the LCMs.

Plaintiff's Second Amendment challenge does not appear to be that any law
unconstitutionally prevented his right to possess and carry firearms. His challenge under the Second
Amendment appears to be that he was **arrested** for possession of firearms purportedly legally
within his possession, coupled with the seizure of those firearms by officers. The gist of this case is
the purported unlawful arrest. However, Plaintiff cannot challenge that arrest, i.e., the officers'
actions, under the Second Amendment. Plaintiff cannot turn a Fourth Amendment unlawful arrest
into a Second Amendment challenge. *See, e.g., Bletz ex rel. Est. of Bletz v. Gribble*, 640 F. Supp. 2d
907, 922 (W.D. Mich. 2009), aff'd in part, rev'd in part and remanded sub nom. *Bletz v. Gribble*,
641 F.3d 743 (6th Cir. 2011) (in claiming a Second Amendment violation, where the alleged
"deprivation" results from an on-the-spot determination of police officers, where the measure of
damages available under the Second Amendment theory would be no different than under the
Fourth Amendment, then the entire premise of Plaintiff's Second Amendment claim is subsumed in
the Fourth Amendment analysis.)

It does not appear that Plaintiff is alleging that enforcement of Penal Code § 32310 is
unconstitutional. However, whether Plaintiff is challenging Penal Code § 32310 is unclear.[7]
Plaintiff claims Defendants violated his right to bear arms but does not make a clear allegation that
he is challenging the law itself. If Plaintiff is in fact challenging the constitutionality of Penal Code
§ 32310, he must file notice of the challenge pursuant to Fed. R. Civ. P. Rule 5.1 and Local Rule
132. It also appears that Plaintiff is claiming a deprivation of property, which may be better suited
for a Due Process claim under the Fourteenth Amendment. Therefore, Defendants' Motion to
Dismiss will be granted as to Plaintiff's second cause of action with leave to amend.

///

_____

[7] If Plaintiff is challenging the constitutionality of the law, he must name the appropriate defendant.

### E.  Equal Protection Claim

In Plaintiff's third cause of action, Plaintiff alleges that he was denied equal protection of the laws when Tulare County and Defendant Boudreaux promulgated certain customs and practices that violated Plaintiff's right to equal protection. (Doc. No. 16 at 11.) Plaintiff further alleges that such customs and practices demonstrated a deliberate indifference on the part of Defendants against the constitutional rights of particular minorities. (*Id.*) Defendants argue that Plaintiff fails to state an equal protection claim by only alleging generically that he was treated differently based on his race. (Doc. No. 18 at 16-17.) Specifically, Defendants argue that Plaintiff does not allege that other similarly situated individuals were treated differently. (*Id.*) Plaintiff counters that his allegation involves the selective enforcement of Penal Code § 32310 against minorities based on their race. (Doc. No. 20 at 9-12.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class. *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702– 03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082 (9th Cir. 2003). Government entities have discretion in prosecuting its criminal laws, however, enforcement of its criminal laws is subject to the equal protection clause of the Fourteenth Amendment. *Rosenbaum v. City and Cnty. Of San Francisco,* 484 F.3d 1142, 1152 (9th Cir. 2007).  "To prevail in an equal protection claim under the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect, and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa County,* 693 F.3d 896, 920 (9th Cir. 2012) (quoting *Rosenbaum v. City & County of San Francisco,* 484 F.3d 1142. 1152 (9th Cir. 2007)). To show discriminatory purpose, a plaintiff must show "'the decision-maker…selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' it's adverse effects upon an identifiable group.'" *Rosenbaum,* 484 F.3d at 1153 (quoting *Wayte v. United States,* 470 U.S. 598, 608 (1985)). "In order to prove a discriminatory effect, 'the claimant must show that similarly situated individuals…were not prosecuted.'" *Lacey,*

693 F.3d at 920 (citing *United States v. Armstrong,* 517 U.S. 456, 465 (1996)).

For a plaintiff seeking to demonstrate selective enforcement, a plaintiff must show police misconduct was part of a policy, plan, or pervasive pattern, in addition to showing discriminatory effect and purpose. *Id.* Enforcement can be shown through actual or threatened arrests, searches and temporary seizures, or other coercive conduct by the police. *Lacey,* 693 F.3d at 920. Where there is no formal government policy, there must be a showing of a longstanding practice or custom which operates as the standard procedure off the government entity. *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino,* 99 F.3d at 918 (citing *Monell v. Dept. of Soc. Servs. Of N.Y.,* 436 U.S. 658, 691 (1978)). Liability for an improper custom cannot be based on isolated or sporadic incidents, it must be based on practices that are of sufficient duration, frequency and consistency that the conduct has become the customary method of carrying out the policy. *Id.*

Defendants argue that Plaintiff does not plead that other similarly situated individuals were investigated, arrested, or prosecuted. (Doc. No. 18 at 17.) Defendants argue that Plaintiffs instead broadly and generically allege that Plaintiff was treated differently simply because of his race. (*Id.*)

Here, Plaintiff fails to allege all elements of the equal protection claim. Plaintiff alleges that Defendants enforced a policy selectively against Plaintiff based solely on his race. However, Plaintiff fails to specify the policy that was enforced, and that similarly situated individuals were not treated in the same matter. If Plaintiff is alleging that officers were selectively ignoring the freedom week exemption, it is not clear in the complaint. Instead, Plaintiff makes conclusory statements about conduct without alleging enough facts to support the conduct was pervasive, used only against minorities, and was ratified by the government entity in some fashion. Broad conclusory statements are not sufficient to support a claim. As such, Defendants' motion to dismiss shall be granted as to Plaintiff's third cause of action with leave to amend.

**F. Conspiracy to Deprive Plaintiff of Civil Rights; 42 U.S.C. § 1985(2) and (3)**

In Plaintiff's fourth cause of action, Plaintiff alleges that Defendants were "invidiously motivated to discriminate against him and others of Asian minority heritage and to selectively ignore and disregard the Fourth/Fourteenth Amendment protections, and the 'Freedom Week'

exemption that applied to him because they, and each of them, harbored racial or class-based animus." (Doc. No. 16 at 13.) Defendants argue that Plaintiff fails to allege any agreement between the Defendants. (Doc. No. 18 at 18-19.) Plaintiff counters that he has alleged enough to establish a tacit agreement because he alleges that Defendants all knew of the freedom week exemption, all selected to enforce Penal Code § 32310 against him, and all conducted the search/seizure together. (Doc. No. 20 at 12-13.)

Title 42 United States Code Section 1985 provides a cause of action where two or more persons conspire to deprive another individual of a constitutional right. 42 U.S.C. §1985. To state a claim under 42 U.S.C. §1985(3), a plaintiff must demonstrate (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the rights or privileges of a citizen, and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured or deprived of any right or privilege. *United Bhd. Of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 828-29 (1983). Such a claim requires allegations as to the substance of the agreement. *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1868 (2017). The second element of a claim requires not only that the purpose of the agreement be a deprivation of a right or privilege but also that the agreement was motivated by some racial, or class-based, invidiously discriminatory animus. *Scott,* 463 U.S. 825 at 829.

Defendants argue that Plaintiff fails to state a claim for conspiracy because Plaintiff fails to allege an agreement between Defendants. Plaintiff merely alleges that Defendants were motivated to discriminate against him and other persons of Asian descent, but he does not argue that there was an agreement to discriminate, only that the Defendants were all similarly motivated. The Court agrees with Defendants. Plaintiff's allegations in the first amended complaint fail to include any factual support for an alleged agreement between the Defendants. Plaintiff alleges that there was a deprivation of a right and that it was motivated by racial animus. However, there are not allegations that each Defendant knowingly agreed to deprive Plaintiff of a constitutional right. Based on the foregoing, Plaintiff's fourth cause of action will be dismissed with leave to amend.

///

///

### G. *Monell* Claim, 42 U.S.C. § 1983 – Policy, Practice, or Custom

In Plaintiff's fifth cause of action, Plaintiff alleges that Tulare County and Defendant Boudreaux promulgated certain customs and practices which demonstrates a deliberate indifferent to the constitutional rights of persons living in Tulare County, particularly minorities. (Doc. No. 16 at 14.) Specifically, Plaintiff alleges that Tulare County and Defendant Boudreaux "established, maintained, encourages, allowed and/or ratified a custom, practice, or policy of providing inadequate training, supervision, instruction, oversight, and discipline to deputies and other subordinates, thereby failing to discourage constitutional violations and tacitly agreeing to violate Plaintiff's constitutional rights." (*Id.*) Defendants argue that Defendants are entitled to qualified immunity. (Doc. No. 18 at 19-21.) Additionally, Defendants argue that even if they are not entitled to qualified immunity, Plaintiff fails to establish that he was deprived of a constitutional right. (*Id.* at 21-23.) Plaintiff counters that there was a clearly established right at the time of his arrest, namely the freedom week exemption, thereby extinguishing a claim of immunity. (Doc. No. 20 at 14-16.) Further, Plaintiff contends that when alleging a failure to train/supervise theory it is enough to plead that the custom or policy can be inferred from the allegations. (*Id.*)

A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Webb v. Sloan*, 330 F.3d 1158, 1163–64 (9th Cir. 2003). Rather, a local government unit may only be held liable if it inflicts the injury complained of. *Monell*, 436 U.S. at 694; *Gibson*, 290 F.3d at 1185.

Generally, a claim against a local government unit for municipal or county liability requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 385 (1989). Alternatively, and more difficult to prove, municipal liability may be imposed where the local government unit's omission led to the constitutional violation by its employee. *Gibson*, 290 F.3d at 1186. Under this route to municipal liability, the "plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Id*. Deliberate

1  indifference requires a showing "that the municipality was on actual or constructive notice that its

2  omissions would likely result in a constitutional violation." *Id*.

3      There is no respondeat superior liability under § 1983, and a municipality or county cannot

4  be held liable solely because it employs a tortfeasor. *See Monell*, 436 U.S. 658, 691 (1978).  Local

5  governments are subject to liability under 42 U.S.C. § 1983 only where an official policy or custom

6  causes a deprivation of constitutional rights. *Id*. at 690-91. To impose municipal liability under §

7  1983 for a violation of constitutional rights, a plaintiff must demonstrate: "(1) that [the plaintiff]

8  possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy;

9  (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4)

10 that the policy is the moving force behind the constitutional violation."  *See Plumeau v. School Dist.*

11 *#40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citations and internal quotation marks

12 omitted).

13     To establish a failure-to-train/supervise claim, a plaintiff must show that "'in light of the

14 duties assigned to specific officers or employees, the need for more or different training [or

15 supervision] [was] obvious, and the inadequacy so likely to result in violations of constitutional

16 rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the

17 need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting Canton, 489 U.S. at 390).

18     Ordinarily, a single constitutional violation by an untrained employee is insufficient to

19 demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S.

20 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional

21 violations by untrained employees," *id*., unless the need for training is "so obvious" and "so likely

22 to result in the violation of constitutional rights," that "the failure to provide proper training may

23 fairly be said to represent a policy for which the city is responsible, and for which the city may be

24 held liable if it actually causes injury," *Canton*, 489 U.S. at 390.

25     In the first amended complaint, Plaintiff alleges that there is a custom, policy, or practice

26 that was promulgated by Tulare County and Defendant Boudreaux that demonstrates a deliberate

27 indifference of the constitutional rights of minorities. (Doc. No. 16 at 14.) Plaintiff does not allege

28 what the custom, policy, or practice was that Defendants promulgated. Plaintiff also fails to provide

any facts of the custom, policy, or practice in place. Instead, Plaintiff recites the elements of the claim with threadbare allegations. Plaintiff states that the County of Tulare and Defendant Boudreaux failed to "discourage constitutional violations." However, a municipality will not be held liable simply by employing tortfeasors. (Doc. No. 16 at 14.)

Even under a failure to train theory, Plaintiff's allegations are insufficient. Plaintiff fails to allege that there was a pattern of similar conduct by others under the supervision of Defendant Boudreaux. Plaintiff also fails to allege that the need for training was so obvious that the failure was likely to lead to constitutional violations. Plaintiff alleges that the officers should have been better trained on the stay of enforcement order, but that alone is insufficient. Plaintiff's allegations are conclusory, bare recitation of the elements without supporting facts. Therefore, Defendants' motion to dismiss will be granted as to Plaintiff's fifth cause of action with leave to amend.

## H.  Qualified Immunity

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When considering an assertion of qualified immunity, the court makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established at the time of defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 94, 201 (2001)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting *al-Kidd*, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light

of the specific context of the case, not as a broad general proposition." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *C.B. v. City of Sonora*, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing *al-Kidd*, 563 U.S. at 740). An officer who reasonably but mistakenly believes that his actions are warranted under state law may be entitled to qualified immunity. *Id.* An official's subjective beliefs are irrelevant. *Inouye*, 504 F.3d at 712.

Defendants argue that there was no violation of Plaintiff's rights. However, in the alternative, Defendants argue that they are entitled to qualified immunity. In particular, Defendants argue that there was no clearly established constitutional right to possess LCMs at the time of Plaintiff's arrest. Plaintiff argues that there was a clearly established right existed because TCSO and Sheriff Boudreaux were aware of the court order staying enforcement of § 32310 for persons who purchased LCMs during freedom week.

The Supreme Court has cautioned courts from defining 'clearly established' in general terms. *Carrillo v. County of L.A.,* 798 F.3d 1210, 1223 (9th Cir. 2015). This is because an officer is entitled to qualified immunity unless the pre-existing precedent "clearly prohibit[s] the officer's conduct in the particular circumstances before him." *Slater v. Deasey,* 943 F.3d 898, 905 (9th Cir. 2019) (quoting *District of Columbia v. Websy,* 138 S. Ct. 577 (2018)). Thus, general propositions are of little help in determining if the nature of the particular conduct is violative. *Slater,* 943 F.3d at 905 (citing *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011)). For a law to be clearly established, it is not necessary that every similar action has been previously found to be unlawful, but rather that based on the pre-existing law it is apparent that the action is unlawful. *Carrillo,* 798 F.3d at 1224

(quoting *Fogel c. Collins,* 531 F.3d 824, 833 (9th Cir. 2008). Specifically, the contours of the right must be sufficiently clear that a reasonable officer would understand what action violates the right. *Id.*

Although a defendant may raise a qualified immunity defense at early stages in the proceeding, courts have recognized that the defense is generally not amenable to dismissal under Rule 12(b)(6), because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999); See *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 974–75 (9th Cir. 2009) (where extra-record evidence is proffered or required to determine the facts at hand, qualified immunity must be asserted in a summary judgment motion).  Whether Plaintiff's constitutional rights were violated in this matter, and whether a reasonable official would have known their conduct was violating a clearly established right, hinges on further factual development in this action. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 974–75 (9th Cir. 2009) (where extra-record evidence is proffered or required to determine the facts at hand, qualified immunity must be asserted in a summary judgment motion). Thus, the Court cannot grant dismissal on the basis of qualified immunity at this stage.

## I.   False Arrest

In Plaintiff's seventh cause of action, Plaintiff alleges that he was arrested and prosecuted without probable cause. (Doc. No. 16 at 17.) Defendants argue that Plaintiff's arrest was lawful and based on probable cause. (Doc. No. 18 at 24.) Specifically, Defendants argue that probable cause was found by the Superior Court during the criminal proceedings. (*Id.*) Plaintiff counters that the search was not lawful and therefore the arrest was not based on probable cause. (Doc. No. 20 at 16.) Further, Plaintiff argues that the Superior Court found that Plaintiff was factually innocent thereby finding that the arrest lacked probable cause as a matter of law. (*Id.*)

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). To state a claim under § 1983 for false arrest, however, a plaintiff must allege facts "to demonstrate that there was no probable cause to arrest him." *See Cabrera v. City of Huntingdon Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citing

*George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)). Probable cause "exists when under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the person arrested] had committed a crime." *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). The defense that an arrest was made in good faith and with probable cause is available to officers in a §1983 action because an officer who makes an arrest based on probable cause is not liable for false arrest even when there is a later finding of factual innocence.[8] *Rivera v. City of Merced*, 2006 WL 3349576 at *30 (E.D. Cal. November 15, 2006) (The defense of undertaking an arrest in good faith and with probable cause is still available to officers in a § 1983 action because an officer who arrests someone with probable cause is not liable for false arrest simply because the factual innocence of the suspect is later proved.); *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), overruled on other grounds, *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (the defense of good faith and probable cause are available to officers in the action under § 1983).

Here, Defendants argues that Plaintiff was arrested based on probable cause, which was determined by the criminal court. (Doc. No. 18 at 24; *See* Doc. No. 21-1, Exh. A at 25 (preliminary hearing transcript); *See also* Doc. No. 25, Exh. 4.) Plaintiff's allegations in the FAC are generic. Plaintiff argues in his opposition to the motion to dismiss that there can be no probable cause where the Plaintiff has been found to be factually innocent. (Doc. No. 21-1, Exh. C.) However, a finding of factual innocence is not sufficient to establish that there was no probable cause for the arrest.

Plaintiff was arrested after a search of his room uncovered LCMs and Plaintiff could not demonstrate to officers that they were obtained legally, even though he was given the opportunity to provide such proof. (Doc. No. 16 at ¶ 15.J-15.K.) As demonstrated above and as currently alleged, the search itself was reasonable, and without proof that the LCMs were legally obtained, the

---

[8] The test for "probable cause" has been stated to be "whether at that moment [when the arrest was made] the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, (1964); accord *al-Kidd v. Ashcroft*, 580 F.3d 949, 966 (9th Cir. 2009) (the most famous modern formulation of "probable cause" comes from Justice Stewart's opinion in *Beck v. Ohio*), rev'd and remanded, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011

officers had probable cause to arrest. Probable cause exists where there is a fair probability that the person being arrested committed a crime. Such is the case where Plaintiff was in possession of LCMs, generally illegal, and could not prove that they were obtained legally during freedom week. Therefore, Defendants Motion to Dismiss will be granted as to Plaintiff's Seventh cause of action with leave to amend, to the extent Plaintiff can do so in good faith.

**J. Barring of Plaintiff's Conversion, Negligence, Intentional Infliction of Emotion Distress, Negligent Infliction of Emotional Distress, and California Civil Code § 52.1 claims**

Defendants next argue that Plaintiff's state law tort claims are barred by the California Torts Claims Act. (Doc. No. 18 at 25-27.) Plaintiff argues that the complaint does not contain any cause of action that does not directly flow from the facts set forth in the Tort Claim notice. (Doc. No. 20 at 16-17.)

California's Tort Claim Act (TCA) requires a Plaintiff to present to the public entity all claims for money or damages against the public entity as a prerequisite to filing a lawsuit against the public entity. *Via v. City of Fairfield,* 833 F.Supp.2d 1189, 1196 (E.D. Cal. June 13, 2011) (dismissing plaintiff's cause of actions because allegations in TCA claim did not notify the defendant of a claim for lack of probable cause). Section 910 of the TCA requires that the claim include the date, place, and other circumstances of the occurrence and a general description of the injury, damage, or loss. Cal. Gov't Code § 910; *Via,* 833 F.Supp.2d at 1197. The TCA claim need not meet the detail and specificity required in a pleading, the claim must however, provide enough information for the public entity to adequately investigate the claims and settle them. *Via,* 833 F.Supp.2d at 1197.  Where the allegations in TCA claim and the complaint vary, courts will differentiate claims that are merely an elaboration of details in the TCA claim from claims that are based on different facts entirely. *Id.* While a claim may include allegations that give rise to a theory not in the original TCA claim, the facts underlying each cause of action in the complaint must have been contained in the TCA claim. *Id.* Courts generally bar claims that are based on a complete shift in allegations. *Id.*

The doctrine of substantial compliance may validate a claim that substantially complies with all of the statutory requirements *City of Stockton v. Superior Court*, 42 Cal.4th 730, 745 n.11

(2007); but is technically deficient in one or more particulars if "the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." *Connelly v. County of Fresno*, 146 Cal.App.4th 29, 38 (5th Dist.2006), following *Loehr v. Ventura County Community College District,* 147 Cal.App.3d 1071, 1083 (2d Dist. 1983).

Plaintiff's TCA claim was filed on July 20, 2020. (Doc. No. 25 at Exh. 1.) Plaintiff's TCA allegations include a claim for wrongful arrest and for the TCSO's failure to adequately train its deputies regarding the stay of enforcement order. (*Id.*) Specifically, Plaintiff's claim states, "[p]robation search of Mr. Yang's brother revealed information regarding Mr. Yang having weapons and ammunition at the residence. The at-issue magazine was purchased during Freedom Week and was legally possessed. Regardless, Mr. Yang was arrested." (Doc. No. 25 at 5.) Plaintiff further states there was a "failure to train deputies in light of notice that such arrests will cause constitutional violations," citing *Monell.* (Doc. No. 25 at 6.) Plaintiff has brought several state law actions in the complaint: Bane Act violations, conversion, negligence, and emotional distress. Plaintiff's TCA claim does not explicitly state these causes of action. However, the claim substantially complies with the statutory requirements because the claims alleged in the complaint can be understood to exist from the TCA claim. For example, the TCA claim includes a field property receipt, stating all the items that were seized based on Plaintiff's arrest. (Doc. No. 25 at 14.) It is likely that Plaintiff could bring a claim for conversion believing that his arrest and the subsequent seizure were unlawful. Further, the TCA claim includes a Declaration from Douglas Wormald stating that he notified TCSO of the stay of enforcement order on April 15, 2019. A person could reasonably understand that a claim for negligence and thus negligent infliction of emotional distress could come from the TCSO's failure to comply with the stay of enforcement order. Finally, it can also be understood based on Plaintiff's arrest that there may be a claim for emotional distress. Furthermore, the same facts contained in the TCA claim are the basis for all the state law claims in the first amended complaint.

Plaintiff's TCA claim substantially complies with statutory requirements of the California TCA. Therefore, Plaintiff's state law claims are not barred.

### K.  Immunity under California Government Code § 821.6

Defendants argue that they are immune from liability for Plaintiff's state law claims because of California Government Code 821.6. (Doc. No. 18 at 25.) Plaintiff's counter that section 821.6 does not bar Plaintiff's state law claims because section 821.6 is limited to malicious prosecution claims, which Plaintiff is not alleging. (Doc. No. 20 at 17-19.)

Government Code § 821.6 states that "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." When interpreting state law, federal courts are bound by the decisions of the state's highest court. *Garmon v. County of L.A.,* 828 F.3d 837, 847 (9th Cir. 2016). In *Sullivan v. County of L.A.,* the California Supreme Court found that section 821.6 was limited to malicious prosecution cases. *Sullivan v. County of L.A.,* 12 Cal.3d 710 (1974). The Ninth Circuit followed the California Supreme Court's *Sullivan* decision in *Garmon,* when it reversed a district court's grant of immunity based on section 821.6 in a case which was not limited to malicious prosecution. *Garmon,* 828 F.3d at 847 (Because the California Supreme Court has already spoken on this issue, we follow *Sullivan* and we reverse and hold that the district court erred in dismissing the state law claims against County Defendants because the claims against them are not malicious prosecution claims.).

Just as *Garmon*, this Court will follow the California Supreme Court and find that section 821.6 is limited to malicious prosecution case, which this case is not. Defendants' argument that they are entitled to immunity under section 821.6 is rejected.

### L.  Bane Act

In Plaintiff's sixth cause of action, Plaintiff alleges that Defendants placed Plaintiff under arrest "by means of official compulsion and under color of authority, [Defendants] threatened Plaintiff with violence if he were to resist." (Doc. No. 16 at 16.) Defendants argue that Plaintiff fails to allege violence or threat of violence. (Doc. No. 18 at 27-28.)

California Civil Code section 52.1, known as the Bane Act, authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*,

949 P.2d 941, 942 (1998); *Cornell v. City & County of San Francisco,* 17 Cal.App.5th 766, 791 (2017) (Finding more than simple false arrest, "the arrest was carried out with threats of violence and was just the start of a series of events suggesting an intent to demean him and set him up."). A claim under section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Id*. at 944. The essence of a Bane Act claim is that a defendant, through threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing something that he had the right to do under the law or to force the plaintiff to do something that he was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist*., 57 Cal. Rptr. 3d 454, 472 (Cal. Ct. App. 2007) (quotation marks omitted). In evaluating conduct that is alleged to have violated the Bane Act, the Court must consider whether a reasonable person, in the plaintiff's place would have perceived the defendants' conduct as threatening violence. *Fleeman v. County of Kern,* 2021 WL 263447 at *30 (E.D. Cal. June 24, 2021) (finding plaintiff failed to allege that he was intimidated by defendants, felt coerced to engage or not engage in certain activity, and specific statements that could reasonably be construed as a threat of violence).

Plaintiff alleges that he was threatened with violence if he were to resist arrest. However, section 52.1 requires an attempt or complete act of interference with a legal right and a form of coercion. Plaintiff alleges that officers threatened him with violence. However, Plaintiff does not allege that he was coerced or forced to do something that he was not required under the law. Here, there has been findings that Plaintiff's arrest was based on probable cause. (*See* Doc. No. 25, Exh. 4; Doc. No. 21-1, Exh. A at 25.) As described above, the finding of factual innocence does not negate the findings of probable cause. Therefore, in determining if there has been a Bane Act violation, a reasonable person in Plaintiff's shoes, as an arrestee, would have felt coerced to engage in or not engage in certain activities in addition to the statements that could reasonable be construed as a threat of violence. Plaintiff does not allege that he was coerced in any way. While he alleges statements that may be construed as a threat of violence, this is separate from coercion. Additionally, the arrest was made with probable cause, and it would be reasonable for an officer to warn that resisting arrest could be met with violence. Plaintiff has not properly plead a Bane Act violation. Thus, Defendants' motion to dismiss will be granted as to Plaintiff's sixth cause of action

with leave to amend.

**M. Conversion**

In Plaintiff's eighth cause of action, Plaintiff alleges that Defendants "knowingly, intentionally, and substantially interfered" with Plaintiff's ownership of his weapons and ammunition by seizing them, preventing Plaintiff from accessing them, and refusing to return them. (Doc. No. 16 at 18.) Defendants first argue that Plaintiff's claim is barred by Plaintiff's failure to properly claim the cause of action in the TCA. (Doc. No. 18 at 19-21.) Further, Defendants argue that Plaintiff cannot meet the wrongful taking requirement of a conversion claim as the weapons were seized based on probable cause. (*Id.* at 28-29) Plaintiff counters that the seizure was illegal and wrongful. (Doc. No. 20 at 20.)

Conversion is the wrongful exercise of dominion over the property of another. *Oakdale Village Group v. Fong,* 43 Cal.App.4th 539, 543 (1996). To bring a conversion claim, a plaintiff must show "'(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages' resulting from the conversion claim." *Vega v. JP Morgan Chase Bank, N.A.,* 654 F.Supp.2d 1104, 1121 (E.D. Cal. August 25, 2009) (citing *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1065 (1998)). To establish a conversion claim, a plaintiff must establish an actual interference with the plaintiff's ownership or right of possession. *Vega,* 654 F.Supp.2d at 1121. For a conversion claim to survive, the plaintiff must have had the right to possession of the property. *Burlesci,* 68 Cal.App.4th at 1065.

Plaintiff alleges that the seizure of his weapons and ammunition was unlawful. Defendants argue that Plaintiff cannot meet the wrongful taking requirement because the items were seized incident to a lawful arrest. The Court agrees with Defendants. The Superior Court found that Plaintiff's arrest was based on probable cause making the arrest lawful. (*See* Doc. No. 25, Exh. 4; Doc. No. 21-1, Exh. A at 25.) The weapons and ammunition were then seized incident to the arrest. The legality of Penal Code § 32310 remains undecided. However, at the time of the arrest, the law was in effect. Further, Plaintiff was unable to provide the arresting officers with proof that the LCMs were lawfully obtained during freedom week. (Doc. No. 16 at ¶ 15.J-15.K.) As Plaintiff's

1   property was seized incident to a lawful arrest, Defendants' motion to dismiss will be granted as to

2   Plaintiff's eighth cause of action with leave to amend to the extent he can do so in good faith.

3       **N.  Negligence**

4       In Plaintiff's ninth cause of action, Plaintiff alleges that Defendants "negligently and

5   recklessly breached their duty to use reasonable and ordinary care in committing the actions and

6   inactions alleged [in the complaint]." (Doc. No. 16 at 18.) Defendants first argue that Plaintiff's

7   claim is barred by Plaintiff's failure to properly claim the cause of action in the TCA. (Doc. No. 18

8   at 19-21.) Further, Defendants argue that Plaintiff fails to allege a duty that was owed and that the

9   duty was breached by Defendants. (*Id.* at 29-30.) Plaintiff counters that the allegations clearly

10  incorporate the elements of duty and breach. (Doc. No. 20 at 20.)

11      Under California law, negligence requires (a) a legal duty to use due care, (2) a breach of

12  that legal duty, (3) the breach was the proximate or legal cause of the (4) actual resulting injury or

13  damages. *United States Liability Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal. 3d 586, 594 (1970);

14  *Koepke v. Loo,* 18 Cal.App.4th 1444, 1448-49 (1993). Under established principles, allegations of

15  negligence, proximate causation, and resulting injury and damages is sufficient to state a claim for

16  negligence. *Hoyem v. Manhattan Beach City Sch. Dist.,* 22 Cal. 3d 508, 514 (1978). Generally, a

17  person owes a duty of care to all persons who are foreseeably endangered by his/her conduct.

18  *Tarasoff v. Regents of Univ. Cal.,* 17 Cal.3d 425, 434-35 (1976). The existence of duty is a question

19  of law which depends on the foreseeability of the risk of harm and the policy considerations for

20  imposing liability in specific situations. *Jacoves v. united Merchandising Corp.,* 9 Cal.App.4th 88,

21  107 (1992). All persons owe a duty of ordinary care to prevent others being injured by their

22  conduct. Ordinary care is the ordinary care a prudent person would exercise in the same situation.

23  *Saldano v. United States,* 2007 WL 9760874 at *15 (E.D. Cal. Sept. 20, 2007). To show causation a

24  Plaintiff must establish that the defendant's breach of duty was a substantial factor in causing the

25  harm. *Frausto v. Department of California Highway Patrol,* 53 Cal.App.5th 973, 996 (2020).

26  However, where negligence is based on the conduct of officers making an arrest, if the arrest is

27  based on probable cause, there may be no facts which support a claim for negligence. *Scotti v. City*

28  *of Phoenix,* 609 Fed.Appx. 386, 389 (9th Cir. 2015) (independent probable cause negates state law

1    negligence claims).

2    Here, Plaintiff's first amended complaint alleges that the officers owed Plaintiff an ordinary

3    duty of care to use reasonable and ordinary care in performing their duties. Plaintiff also alleges that

4    the duty was breached by Defendants' conduct in effectuating his arrest based on the allegedly

5    unlawful search. Further, Plaintiff also alleges that his injures–pain, shock, suffering, and

6    humiliation–were caused by his arrest. Liberally construing the allegations, Plaintiff properly

7    alleges a claim for negligence. However, a negligence claim may not be sustained where the

8    negligence is based on an arrest that was supported by probable cause. Such is the case here, the

9    California Superior Court determined that there was probable cause for the arrest. (*See* Doc. No. 25,

10   Exh. 4; Doc. No. 21-1, Exh. A at 25.)

11   If Plaintiff is alleging that the negligence was based on the search of Plaintiff's room, that is

12   not clear in the complaint. Rather, it appears that the negligence claim is broad and encompasses all

13   events revolving around Plaintiff's arrest. Therefore, Defendants' motion to dismiss will be granted

14   as to Plaintiff's ninth cause of action with leave to amend.

15   **O. Emotional Distress**

16   In Plaintiff's tenth and eleventh causes of action, Plaintiff alleges both intentional infliction

17   of emotional distress and negligent infliction of emotional distress, respectively. (Doc. No. 16 at 19-

18   20.) In Plaintiff's tenth cause of action, he alleges that Defendants' conduct was outrageous and

19   done with the intention of causing emotional distress. (*Id.* at 19.) In Plaintiff's eleventh cause of

20   action, he alleges that the conduct of Defendants was "negligent and a substantial factor in causing

21   the Plaintiff serious emotion distress which included suffering, anguish, fright, horror, nervousness,

22   grief, anxiety, worry, shock, humiliation, and shame." (*Id.* at 20.) Defendants first argue that

23   Plaintiff's claim is barred by Plaintiff's failure to properly claim the cause of action in the TCA.

24   (Doc. No. 18 at 19-21.) Further, Defendants argue that Plaintiff fails to allege specific outrageous

25   conduct by Defendants in his claim for intentional infliction of emotional distress. (*Id.* at 30-31.)

26   Defendants also argue that Plaintiff fails to establish negligence which is required to demonstrate

27   negligent infliction of emotional distress. (*Id.* at 31.) Plaintiff counters that his allegations are

28   sufficient. (Doc. No. 20 at 20-21.) Further, Plaintiff counters that it is too early to determine if

Plaintiff has failed to establish negligence. (*Id.*)

    i.   *Intentional infliction of Emotional Distress*

      Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); *Tekle v. United States*, 567 F.3d 554, 855 (9th Cir. 2007). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Corales*, 567 F.3d at 571; *Tekle*, 511 F.3d at 855.

      Here, Plaintiff alleges that the Defendants conduct was outrageous but does not identify what conduct specifically was outrageous. Defendants were conducting a parolee search of Parolee Yang's home, Yang identified that there were weapons and ammunition in the house, officers searched for and seized the weapons and ammunition, and arrested plaintiff after he failed to provide proof that the LCMs were purchased during freedom week. Plaintiff does not identify which of these actions taken by Defendants were so egregious as to exceed the bounds of normal behavior. The officers were conducting a routine search when they entered Plaintiff's home. They believed, rightly or wrongly, that possession of LCMs was illegal, and they placed Plaintiff under arrest. It is unclear what conduct by the Defendants was outrageous. As such, Defendants' motion to dismiss will be granted as to Plaintiff's tenth cause of action with leave to amend.

    ii.   *Negligent Infliction of Emotional Distress*

      Negligent infliction of emotional distress ("NIED") is not a separate tort, but rather falls under the tort of negligence. *Macy's California, Inc. v. Super. Ct.*, 41 Cal. App. 4th 744, 748 (1995). "A cause of action for negligent infliction of emotional distress requires that a plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). It is settled in California that in ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an

item of parasitic damages. *Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 433 (1967); *Merenda v. Super. Ct.*, 3 Cal. App. 4th 1, 8–9 (1992).

Here, Plaintiff fails to properly alleges negligence. Defendants argue that there is no negligence and therefore, there can be no NIED. Plaintiff argues that it is too early to determine if there is negligence and NIED. Defendants' argument is correct, unless Plaintiff is able to establish a claim for negligence a NIED claim cannot be sustained. Based on the allegations in Plaintiff's first amended complaint, he failed to establish a claim for negligence. Therefore, Defendant's motion to dismiss will be granted as to Plaintiff's eleventh cause of action with leave to amend.

**IV.   Leave to Amend**

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so requires" and that rule is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Nevertheless, leave to amend need not be granted where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See Amerisource Bergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Plaintiff should be granted leave to amend. As this is the early stages of this action, amendment would not prejudice the opposing party. No discovery deadlines have been set. It does not appear that Plaintiff's request for leave to amend would be sought in bad faith or produce any significant delay. Finally, amendment does not appear to futile in any of the claims above. Rather, it appears that Plaintiff failed to properly allege all required facts and elements in many of the claims. Thus, Plaintiff will be granted leave to amend the dismissed causes of action.

**V.   Conclusion and Order**

Based on the foregoing,

1. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 18) is GRANTED with leave to amend all claims;

2. Defendant Sheriff Boudreaux, in his official capacity, is DISMISSED without leave to amend; and

///

//

3. Within thirty (30) days of service of this order Plaintiff shall file any amended complaint or notify the Court of his intention not to proceed with this action.

IT IS SO ORDERED.

Dated:   **September 7, 2021**                /s/ *Barbara A. McAuliffe*
                                                      UNITED STATES MAGISTRATE JUDGE